IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RENEE K. TRIMBUR, ET AL.,** ) | **CASE NO. 2:13-CV-0160** |
| ) | |
| **Plaintiffs,** ) | **JUDGE EDMUND A. SARGUS, JR.** |
| ) | |
| v. ) | **MAGISTRATE JUDGE NORAH** |
| ) | **MCCANN KING** |
| ) | |
| **NORFOLK SOUTHERN RAILWAY** ) | |
| **COMPANY, ET AL.** ) | **DEFENDANTS' MOTION FOR** |
| ) | **PARTIAL SUMMARY JUDGMENT** |
| **Defendants** ) | |

Defendants Norfolk Southern Railway Company (hereinafter "NSRC") and Norfolk Southern Corporation (hereinafter "NSC"), by and through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully move this Court for an order granting partial summary judgment in favor of Defendants NSRC and NSC as to all claims of Plaintiffs Renee Trimbur, The Kyron Tool & Machine Co., Inc., and C4R's LLC (hereinafter "Plaintiffs") pertaining to the "DOT-111" tank cars involved in the derailment that occurred on July 11, 2012.  Plaintiffs bring various claims against NSRC and NSC relating to the transport of DOT-111 tank cars and their contents.  However, pursuant to federal law, a railroad cannot refuse to transport such shipping containers or materials.  Furthermore, federal law preempts the Plaintiffs' claims as to the carriage of these items.  Accordingly, partial summary judgment in favor of Defendants NSRC and NRC is appropriate as a matter of law.

The factual and legal support for this motion is more fully outlined in the attached Memorandum in Support.  This Memorandum, along with Exhibit "A," is incorporated herein by reference.

Respectfully submitted,

*/s/ R. Leland Evans, Esq.*
**R. Leland Evans, Esq. (0006833)**
**Mary McWilliams Dengler (0034635)**
DICKIE, MCCAMEY & CHILCOTE, P.C.
2109 Stella Court
Columbus, Ohio 43215
(614) 258-6000 Telephone
(614) 258-6006 Facsimile
revans@dmclaw.com
mdengler@dmclaw.com
*Attorneys for Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation*

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of Defendants' Motion for Partial Summary Judgment was electronically filed on August 4, 2014.  Notice of this filing will be sent by operation of this Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ R. Leland Evans, Esq.*
**R. Leland Evans, Esq. (0006833)**
**Mary McWilliams Dengler (0034635)**
*Attorneys for Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

The Plaintiffs in this case present claims for negligence, gross negligence, negligence per se, strict liability, and punitive damages relative to the use of three tank cars present on an NSRC train at the time the train derailed on July 11, 2012.[1]  (Complaint, ECF Doc. No. 2, ¶¶ 8-10, 17-19, 22, 25, 29.)  Despite the Plaintiffs' allegations, Defendants NSRC and NSC did not own, lease, or maintain these "DOT-111" tank cars.  Rather, NSRC merely transported these cars for a portion of the cars' journey to their final destination.  NSRC did so pursuant to federal law, which required the railroad to accept the cars for transport in interchange from another railroad.  Simply put, NSRC could not refuse to carry these tank cars or their contents.  Furthermore, the design, manufacture, maintenance, and handling of the cars are governed exclusively by federal law, and any claims as to the cars' inadequacy are therefore preempted by federal law.  Accordingly, Plaintiffs' DOT-111 tank car claims are preempted and subject to summary judgment.

**II.    STATEMENT OF FACTS**

   **A.    History of the General Electric Tank Cars**

On July 11, 2012, three DOT-111A100W1 ("DOT-111")[2] tank cars containing denatured ethanol were present on NSRC train 186L809 at the time the train derailed.  (Exhibit A.)

---

[1] Plaintiffs also present claims for nuisance and trespass in their Complaint, but do not specifically reference the use or handling of the DOT-111 tank cars within these causes of action. (Complaint, pp. 14-16.)  To the extent that Plaintiffs allege such claims relate in any way to the use of DOT-111 tank cars, Defendants similarly seek summary judgment as to those claims.

[2] "DOT-111" tank cars are DOT specification 111 series non-pressure tank cars designed to carry a variety of products, including certain hazardous materials.  49 C.F.R. §§ 179.200-179.201 (Specifications for Non-Pressure Tank Car Tanks); 49 C.F.R. §§ 179.10-179.24 (General Design Requirements.)

American Railcar Industries, Inc. ("ARI") manufactured these tank cars (identified as NATX 364017, NATX 364083, and NATX 364118) in 2007 on behalf of General Electric Capital Railcar ("GE"), for the transport of flammable liquids. (*Id*.) GE owned the tank cars on the date of the accident. (*Id*.)

In 2007, ARI certified that the design and construction of tank cars NATX 364017, NATX 364083, and NATX 364118 conformed "to all applicable DOT and AAR requirements, including specifications, regulations, rules of interchange, and the DOT Railroad Safety Appliance Standards." (*Id*.) The Association of American Railroads ("AAR") North American Tank Car Committee[3] subsequently approved ARI's Application for Approval and Certificate of Construction for these cars on June 8, 2007. (*Id*.) ARI therefore appropriately certified that the tank cars could be placed into service and were qualified for use in transporting certain hazardous materials such as denatured ethanol ("alcohol N.O.S."). 49 C.F.R. §§ 179.5, 173.31(a)(1)-(2), 172.101, 173.242.

B.  **Transport of the GE Tank Cars in July 2012**

On July 3-4, 2012, a third party unrelated to NSRC and NSC inspected, loaded, and offered tank cars NATX 364017, NATX 364083, and NATX 364118 into service in Cedar Rapids, Iowa. (Exhibit A.) The cars were ultimately bound for a facility in Roanoke, Virginia. (*Id*.) The consignee, Eco-Energy, Inc., certified that the tank car materials were "properly classified, described, packaged, marked and labelled and in proper condition for transportation

---

[3] The AAR Tank Car Committee is comprised of the AAR, rail car owners and manufacturers, shippers of hazmat, rail customers, the U.S. Department of Transportation, Transport Canada, and the National Transportation Safety Board. "The committee works together to develop technical standards for how rail cars, including tank cars used to move hazmat, are designed and constructed." The DOT's Pipeline and Hazardous Materials Safety Administration ("PHMSA") issues federal tank car regulations, while the AAR Tank Car Committee sets industry standards. (https://www.aar.org/safety/Pages/Hazardous-Materials-Transportation.aspx.)

4

according to the applicable regulations of the Department of Transportation." (*Id.*)  NSRC subsequently accepted the cars in interchange from another railroad in Chicago, Illinois, on or about July 10, 2012.[4] (*Id.*)

### III. LAW AND ARGUMENT

#### A. Legal Standard: Fed. R. Civ. P. 56

A court "shall grant summary judgment" when a movant demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may seek summary judgment by asserting that the nonmovant will be unable to present evidence to support an essential element of his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Thereafter, the burden shifts to the nonmovant to introduce specific facts that demonstrate the existence of a genuine issue precluding summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  These facts should "do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*

#### B. Federal Law Mandated that NSRC Transport the GE Tank Cars

Pursuant to the railroads' common-carrier obligation outlined in 49 U.S.C. § 11101(a), a "rail carrier providing transportation or service…<u>shall</u> provide the transportation or service on reasonable request."[5]  (Emphasis added.)  This obligation includes the required transport of hazardous materials.  *Union Pacific R.R. Co. Petition for Declaratory Order*, STB Finance

---

[4] As stated in NSC's Answer to the Complaint, NSRC, not NSC, was the railroad operating train 186L809.  Further, NSRC employed the train crew operating the train and maintained the track upon which the derailment occurred.  (Separate Answer of Defendant Norfolk Southern Corporation, ECF Doc. No. 6, ¶¶ 1, 4, 6, 12-13.)

[5] The Surface Transportation Board ("STB") has broad discretionary authority to "issue a declaratory order to terminate a controversy or remove uncertainty" regarding common carrier obligations under 49 U.S.C. § 11101, and to determine whether a carrier's practices violate § 11101.  5 U.S.C. § 554(e); *Union Pacific R.R. Co. Petition for Declaratory Order*, STB Finance Docket No. 35219, 2009 STB LEXIS 242, at *5 (June 11, 2009).

Docket No. 35219, 2009 STB LEXIS 242, at *1-2 (June 11, 2009) (finding that the railroad had a duty to transport chlorine, a toxic inhalation hazard ("TIH"), even through multiple "High Threat Urban Areas"); *Akron, Canton & Youngstown R.R. Co. v. I.C.C.*, 611 F.2d 1162, 1168-1169 (6th Cir. 1979) (holding that rail carriers could not refuse to transport nuclear materials, despite the railroads' argument that the materials had "a unique potential for harm in the event of a rail accident," and where DOT and NRC regulations covered the safe transport of the materials).  Rail carriers are similarly required to accept and forward hazardous material shipments from other railroads in interchange.  49 U.S.C. § 10742; 49 C.F.R. § 174.14(a) ("A carrier must forward each shipment of hazardous materials promptly and within 48 hours…after acceptance at the…interchange point...").

The Circuit Court of Appeals for the District of Columbia recently addressed the common carrier obligation to transport hazardous materials in the context of a new carrier seeking to avoid the obligation for operations on 800 feet of privately-owned track.  *Riffin v. STB*, 733 F.3d 340, 341 (D.C. Cir. 2013).  The Court found that the Surface Transportation Board had appropriately rejected the new carrier's application to operate without complying with 49 U.S.C. § 11101.  *Id*. at 348.  The Court concurred with the STB's determination that a carrier cannot avoid its statutory obligations "even if [the carrier] suffers hardship" in doing so.  *Id*. at 347 (addressing the carrier's arguments regarding liability exposure and cost-prohibitive insurance premiums for hazmat transportation carriers).

Cognizant of the risks imposed upon rail carriers through their common carrier obligation, as well as the significant risks to the general public during hazardous materials transportation, the U.S. Department of Transportation ("DOT") and the U.S. Department of Homeland Security ("DHS") have cooperated for many years to continually improve the

6

comprehensive regulatory provisions governing the safety and security of hazardous materials transportation by rail.[6]  *See, e.g.,* 73 Fed. Reg. 72,182 (Nov. 26, 2008) (discussing the collaboration between the Departments and their respective agencies to further advance existing rail safety, "by revising the Hazardous Materials Regulations applicable to the safe and secure transportation of hazardous materials."); 49 U.S.C. § 20106(b)(1)(A).  These Hazardous Materials Regulations ("HMR"), 49 C.F.R. §§ 171.1-180.605, govern the transportation of hazardous materials in commerce by rail car, as well as the manufacture and maintenance "of a packaging or a component of a packaging that is represented, marked, certified, or sold as qualified for use in the transportation of a hazardous material in commerce."  49. C.F.R. § 171.1.

### B. Federal Law Preempts Plaintiffs' Claims as to the DOT-111 Tank Cars

In 1975, Congress enacted the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. § 5101 *et seq.* (formerly 49 U.S.C. § 1801, *et seq.*), through which the Secretary of the DOT established the HMR.[7]  The purpose of the HMTA is to "protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in

---

[6] "Congress has vested aspects of national rail oversight in three different federal agencies: US DOT (with primary jurisdiction over rail safety matters), DHS (for national security matters), and the [STB] (with broad general jurisdiction over railroad activities conducted over the interstate railroad network)."  *CSX Transportation, Inc. Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 STB LEXIS 134, at *24 (March 14, 2005) (noting DOT's statutory analysis that "working individually within their respective jurisdictions each has the complete authority to preempt non-Federal laws that undermine national rail uniformity").

[7] The Secretary delegated the authority to issue the HMR to the Pipeline and Hazardous Materials Safety Administration ("PHMSA") (formerly the Research and Special Programs Administration ("RSPA")).  49 U.S.C. § 5103; 49 C.F.R. §§ 1.97, 171.1; 49 U.S.C. § 108.  *See Roth v. Norfalco LLC,* 651 F.3d 367 (3rd Cir. 2011) (addressing the history and purpose of the HMTA, as well as the necessity of consistency and uniformity in the laws and regulations governing hazardous materials transportation).

intrastate, interstate, and foreign commerce."[8]  49 U.S.C. § 5101.  The regulations prescribed under the HMTA apply to those who: (1) transport hazardous material in commerce; (2) cause hazardous material to be transported in commerce; (3) design, manufacture, fabricate, inspect, mark, maintain, recondition, repair, or test a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce; (4) prepare or accept hazardous material for transportation in commerce; (5) are responsible for the safety of transporting hazardous material in commerce; (6) certify compliance with any requirement under 49 U.S.C. § 5101; or (7) misrepresent whether they are engaged in any such activity.  49 U.S.C. § 5103(b).

In this case, the HMR applies to NSRC as a rail carrier transporting denatured ethanol. 49 U.S.C. § 5103(b)(1)(i).  However, contrary to Plaintiffs' allegations, neither NSRC nor NSC owned, leased, or maintained the three tank cars at issue. (Exhibit A.)  NSRC and NSC similarly had no involvement in the design, manufacture, or certification of the tank cars.  (*Id*.)  NSRC's only role relative to the tank cars was the transportation of the cars from Chicago, Illinois to the point of the derailment.  (*Id*.)  Nonetheless, Plaintiffs assert that NSRC and NSC had a duty, based upon alleged design flaws in the tank cars, to "reject [the cars] for inclusion within their train."  (Compl., ¶ 18.)  Plaintiffs' assertions disregard NSRC's statutory duty to accept and carry these cars and their contents.  49 U.S.C. § 11101(a).  Furthermore, the design, manufacture, maintenance, and handling of the cars are governed exclusively by the HMTA, and any claims as

---

[8] "Hazardous material" is defined as a substance or material the Secretary designates under 49 C.F.R § 5103a.  *See* 49 C.F.R. § 172.101.  Under the HMR, "Alcohol N.O.S.," or denatured ethanol, which was being transported in tank cars NATX 364017, NATX 364083, and NATX 364118, is a Hazard class or Division 3 flammable liquid (Identification Number 1987).  *Id*.  The HMR requires that tank cars used to transport such hazardous materials comply with certain specifications.  49 CFR § 173.31(a)(1); 49 C.F.R. § 173.31(a)(2) ("Tank cars and appurtenances may be used for the transportation of any commodity for which they are authorized in this part and specified on the certificate of construction…").

to the cars' inadequacy are therefore preempted by this federal law.  49 C.F.R. §§ 170.1-179.24, 179.200-179.201, 180.501-180.519.[9]

The HMTA expressly preempts all common law claims seeking to impose additional requirements upon a container "qualified for use in transporting hazardous material in commerce," or those who handle the containers.  49 U.S.C. § 5125(b)(1)(A)-(E).  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (finding that state common law falls within the scope of the phrase "law, rule, regulation, order, or standard relating to rail safety"); *Roth v. Norfalco LLC,* 651 F.3d 367, 378 (3rd Cir. 2011) ("Absent from the HMTA preemption provision…is a savings clause exempting common law requirements from the bundle of those non-federal laws and regulations displaced by the federal scheme.").  The HMTA provides the States the ability to implement their own hazardous materials requirements only in a very narrow category of circumstances.  *Roth,* 651 F.3d at 376-377, 379 (describing § 5125(b)(1) as an "expansive" and "robust" preemption provision, which preempts all non-federal laws that are not "substantively the same as" the HMR, and which "leaves little, if any, room for non-federal regulation"); *CSX Transp., Inc. v. Pub. Util. Comm'n of Ohio*, 901 F.2d 497, 502 (6th Cir. 1990) (holding that "[F]ederal power to regulate transportation of hazardous materials is absolute; state power is limited.").

Section 5125(b)(1) of the HMTA provides, in relevant part, as follows:

> [U]nless authorized by another law of the United States, a law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian tribe about any of the following subjects, **that is not substantively the same** as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted:

---

[9] The HMR incorporates by reference additional tank car industry standards, the Manual of Standards and Recommended Practices, Section C--Part III, Specifications for Tank Cars, Specification M-1002.  49 C.F.R. § 171.7.

> (A) the designation, description, and classification of hazardous material.
>
> (B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.
>
> ***
>
> (E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

49 U.S.C. § 5125(b)(1)(A),(B),(E) (emphasis added). "Substantively the same" under the HMTA "means that the non-Federal requirement conforms in every significant respect to the Federal requirement. Editorial and other similar de minimis changes are permitted." 49 C.F.R. § 107.202(d).

Here, the thrust of Plaintiffs' Complaint relative to the DOT-111 tank cars is that NSRC had a duty to reject this series of tank cars and to accept in interchange only those cars with a "safer" design (despite NSRC's inability to do so under 49 U.S.C. § 11101(a)). (Compl., pp. 4-17.) Plaintiffs' allegations that the tank cars were "prone to rupture, breach, and leakage" are equivalent to a design defect claim. However, neither NSRC nor NSC designed or constructed the subject tank cars. Additionally, the DOT, through the HMTA, has addressed the design requirements for DOT-111 tank cars qualified for use in the transportation of hazardous materials in exhaustive detail. *See, e.g.,* 49 C.F.R. § 179.200-7; 49 C.F.R. § 179.201-1; 49 C.F.R. § 173.31(b)(3)-(4) (addressing tank materials, plate thickness, and various protection systems).[10] Plaintiffs' suggestion that NSRC should have accepted for transport only tank cars with an unspecified, alternative, but "safer" design, are not "substantively the same" as the

---

[10] Furthermore, Plaintiffs have not alleged or presented any evidence of noncompliance on the part of NSRC or NSC with the HMTA relative to the tanks cars. Defendants have conversely demonstrated that the cars were properly certified as qualified for use in the transportation of hazardous materials. (Exhibit A.)

extensive DOT-111 tank car specifications under the HMTA. Plaintiff's vague proposal does not "conform in every significant respect" to the federal requirements. Accordingly, Plaintiffs' common law claims regarding the tank cars are preempted under § 5125(b)(1) of the HMTA.

The Secretary of the DOT is authorized under both the HMTA and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.*, to regulate the safety of rail transportation. The FRSA, enacted in 1970, precludes the States from legislating in any area of railroad safety already covered by regulations adopted by the Secretary. 49 U.S.C. § 20106. The HMR constitutes comprehensive regulations issued under the Secretary's authority relating to and "covering" railroad safety in the area of hazardous materials transportation. *CSX Transp., Inc. v. Pub. Util. Comm'n of Ohio*, 901 F.2d at 501 (holding that that the FRSA preemption provision applies to the HMTA, since the HMTA "is a law relating to railroad safety" under which the Secretary promulgated the HMR); *CSX Transp., Inc. v. Williams,* 406 F.3d 667, 671-673 (D.C. Cir. 2005) (directing the district court to enter a preliminary injunction prohibiting the enforcement of a D.C. Act barring all shipments of certain hazardous materials within 2.2 miles of the Capitol, when CSX had a "strong likelihood of success on the merits" regarding its argument for FRSA preemption, when the HMR "covered" the subject of en route security of hazardous materials transportation by rail).[11]

Further supporting the appropriateness of preemption under the HMTA and the FRSA, the HMR provides as follows:

> Sections 5125 and 20106 of Title 49, United States Code, limit the authority of states, political subdivisions of states, and Indian tribes to impose requirements on the transportation of hazardous materials in commerce. A state, local, or Indian tribe requirement on the transportation of hazardous materials by rail **may be preempted under either *49 U.S.C. 5125* or 20106, or both.**

---

[11] "Cover" means that the federal regulations "substantially subsume" the subject matter of the relevant state law or requirement. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

>**(a)** Section 171.1(f) of this subchapter describes the circumstances under which *49 U.S.C. 5125* preempts a requirement of a state, political subdivision of a state, or Indian tribe.
>
>**(b)** Under the Federal Railroad Safety Act *(49 U.S.C. 20106),* administered by the Federal Railroad Administration (see 49 CFR parts 200-244), laws, regulations and orders related to railroad safety, including security, shall be nationally uniform to the extent practicable. A state may adopt, or continue in force, a law, regulation, or order covering the same subject matter as a DOT regulation or order applicable to railroad safety and security (including the requirements in this subpart) only when an additional or more stringent state law, regulation, or order is necessary to eliminate or reduce an essentially local safety or security hazard; is not incompatible with a law, regulation, or order of the United States Government; and does not unreasonably burden interstate commerce.

49 C.F.R. § 179.8 (emphasis added).

Multiple federal courts have held that the HMTA, the FRSA, or both, preempt common law causes of action in cases involving tank car design, maintenance, handling, and transportation issues. *See Mayor & City Council of Baltimore v. CSX Transp., Inc.,* 404 F. Supp. 2d 869, 878-879 (D. Md. 2005) (negligent tank car inspection, maintenance, and service claims filed against a transportation service company were preempted by both the HMTA and the FRSA); *Bradford v. Union Pac. R.R. Co.*, 491 F. Supp. 2d 831, 839 (W.D. Ark. 2007) (common law claims regarding hazardous materials handling and transportation by the railroad were preempted by the FRSA); *Roth,* 651 F.3d at 376-379 (holding that tank car design claims were preempted under the HMTA, reasoning that "were each state or locality permitted to impose its own tank car design requirements, carriers would be faced with a 'patchwork' of multiple and potentially conflicting jurisdictional mandates, with resulting confusion over how to comply").

The Plaintiffs' tank car claims in this case are similarly preempted by the HMTA and the FRSA.  The HMR provides detailed procedures and requirements applicable to not only common carriers transporting hazardous materials, but also shippers, manufacturers, and other parties within the chain of hazardous materials handling.  These regulations specifically outline the

12

design and handling requirements pertaining to DOT-111 tank cars and their contents.  In spite of these comprehensive regulations, and in spite of NSRC's limited role in the transport of the DOT-111 tanks cars, Plaintiffs allege that NSRC should have recognized potential design issues with the tanks cars and rejected them on that basis.  However, as discussed herein, NSRC was required to accept and transport the tank cars, which were certified by the manufacturer as qualified for use in the transportation of hazardous materials, and approved as constructed by the AAR.  Furthermore, as designed and constructed, these cars were certified as complying with the HMR requirements.  Accordingly, Plaintiffs' claims as to the DOT-111 tanks cars are preempted under the HMTA and the FRSA, and must fail.

IV.     CONCLUSION

For the foregoing reasons, Defendants NSRC and NSC respectfully submit that they are entitled to partial summary judgment with respect to Plaintiffs' DOT-111 tank car claims.  Pursuant to federal law, a common carrier cannot refuse to transport DOT-111 shipping containers or their contents.  Furthermore, federal law preempts the Plaintiffs' claims as to the carriage of these items.  Accordingly, partial summary judgment in favor of Defendants NSRC and NRC is appropriate as a matter of law

Respectfully submitted,

*/s/ R. Leland Evans, Esq.*
**R. Leland Evans, Esq. (0006833)**
**Mary McWilliams Dengler (0034635)**
DICKIE, MCCAMEY & CHILCOTE, P.C.
2109 Stella Court
Columbus, Ohio 43215
(614) 258-6000 Telephone
revans@dmclaw.com
mdengler@dmclaw.com
***Attorney for Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation***